# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE
# CIVIL ACTION NO. 3:08CV-133-H

RAY STALLWORTH                                                                            PLAINTIFF

v.

OFFICER JOHNATHAN VAUGHN *et al.*                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Unrepresented by counsel Plaintiff, Ray Stallworth, filed this action against Louis Lawson, Jailer of the Hardin County Detention Center; the Hardin County Detention Center; Kentucky State Trooper Jonathan Vaughn; the Kentucky State Police; and the Hardin County Detention Center Medical Staff. On initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court allowed Stallworth's Fourteenth Amendment individual-capacity claims against Jailer Lawson and the Hardin County Detention Center Medical Staff for their alleged failure to timely treat Stallworth's broken thumb to proceed for further development. This matter is now before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the Court will grant the motion and enter summary judgment in favor of Defendants.

## I. FACTS

On or about March 1, 2007, Stallworth and his son were driving north on Dixie Highway in Stallworth's girlfriend's car when they experienced a flat tire. Stallworth pulled over on the side of the road to change the tire. While Stallworth was working on the tire, two officers "claiming to be U.S. Mint" pulled up beside Stallworth. They asked to see Stallworth's driver's license and registration. Stallworth responded that he did not know where his girlfriend kept her

papers. According to Stallworth, "then they just went into my pockets, pulled out a small bag of weed, searched the car, and handcuffed me." At that time, Stallworth told the officers that he had broken his thumb while changing the tire and needed medical attention. The "U.S. Mint" officers called the Kentucky State Police. When Kentucky State Police Officer Jonathan Vaughn arrived, Stallworth told him that his thumb was broken and that he needed to see a doctor. Instead of taking Stallworth to the hospital, Officer Vaughn transported him to the Hardin County Detention Center (HCDC). Officer Vaughn told Stallworth that his thumb would be examined there. Stallworth alleges that he was denied medical care for his thumb at the HCDC until it was too late. He alleges that this thumb will never be the same again because Defendants delayed in giving him medical treatment.

Defendants have submitted Stallworth's jail and medical records and his deposition transcript. The records and transcript paint a much different picture than the one alleged by Stallworth. The records show that on March 2, 2007, at approximately 11:30 p.m., Stallworth was arrested by the Kentucky State Police and lodged in the HCDC at 12:20 a.m. on March 3, 2007. At 12:59 a.m. on March 3, 2007, Stallworth completed an "Inmate Medical Form." Item #23 on the form asked – "Do you have any medical problems or special conditions we should know about?" In response, it was noted "#23 R/HAND SWOLLEN AND PAINFULL (sic)." This document was signed by Stallworth. On March 4, 2007, Stallworth was treated by Nurse Shanks, LPN, with the HCDC Medical Center. At that time, it was noted that Stallworth had complaints of right hand pain from it being slammed in a door on March 2, 2007, before he was brought to the HCDC. Nurse Shanks also noted that Stallworth's hand was swollen, that he guarded his thumb and complained of pain, but could move his other fingers. At that time,

Stallworth was prescribed 800 mg of Ibuprofen to be taken three times per day and was given an ice pack to apply to the thumb. It was noted that Stallworth's thumb would be monitored and an x-ray would be considered. On March 6, 2007, Stallworth was seen by Dr. Donald Miller and also underwent an x-ray of the right hand at Hardin Memorial Hospital. The x-ray which was signed on March 7, 2007, revealed a "[c]omminuted slightly displaced fracture of the proximal phalanx of the first digit." Dr. Miller prescribed Ultram/Tramadol which Stallworth received three (3) times per day for ten (10) days until complete. On that same date, Stallworth began taking Ibuprofen three (3) times per day until he was released on March 21, 2007.

On March 12, 2007, the HCDC noted that Dr. Miller had referred Stallworth to an orthopaedic physician which was scheduled for March 20, 2007. On March 20, 2007, he was transported to Elizabethtown Orthopaedic Associates. While there Stallworth underwent another x-ray and was treated by Dr. Jeffrey Been who confirmed a right thumb fracture with excellent overall alignment and placed him "in a short-arm thumb spica cast" and advised Stallworth that he would "need a lot of therapy to get all of his motion back but he is still tender over the fracture site and he's a smoker. Follow up in 2-3 weeks and x-ray out of the cast." Stallworth was transferred to the Jefferson County Metro Detention Center on March 21, 2007.

Stallworth admits that he saw the nurse everyday while at HCDC but does not believe that he received treatment. Additionally, despite being seen by a medical doctor (Dr. Donald Miller) on March 6, 2007, he did not consider that as being medical treatment. Stallworth says he does not remember the x-ray at Hardin Memorial Hospital on March 6, 2007, but does not contest that it took place. He did recall seeing Dr. Miller on March 12, 2007, and being transported to Elizabethtown Orthopaedic Associates on March 20, 2007. At Elizabethtown

Orthopaedic Associates, he states that he was x-rayed and his right thumb placed in a cast. Stallworth confirmed that he received Tramadol and 800 mg Tylenol on March 7, 2007, after seeing Dr. Miller on March 6, 2007. After leaving the HCDC and being released from the Jefferson County Detention Center, Stallworth said that he "went to therapy for my thumb" at the University of Louisville Hospital on his own. He admitted not following up with Dr. Been as advised. His thumb was subsequently recast at the University of Louisville Hospital, which was removed May 9, 2007. He then went to physical therapy on May 23, 2007, which he attended for a few visits and quit on July 9, 2007.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record

taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III. ANALYSIS

The Sixth Circuit has held that constitutional violations by state officials are not cognizable directly under the constitution (or by virtue of general federal question jurisdiction) because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), *vacated and remanded on other grounds*, 488 U.S. 1036 (1989). Section 1983 has two basic requirements: (1) the deprivation of federal statutory or constitutional rights by (2) a *person* acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).

"The Supreme Court has held that when the victim of mistreatment . . . is a pretrial detainee, his entitlement to recovering damages is rooted in the Due Process Clause of the Fourteenth Amendment." *Phillips v. Roane County*, 534 F.3d 531, 545 (6th Cir. 2008) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "[D]eliberate indifference" to the serious medical needs of pretrial detainees normally constitutes a substantive due process violation. *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005). To establish a cause of action under § 1983 for deliberate indifference to a pretrial detainee's health, Stallworth must show both (1) "that [he was] incarcerated under conditions posing a substantial risk of serious harm; and (2) that an individual defendant knew of and disregarded a substantial risk of serious harm to his health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). With respect to the second requirement, defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Id.* at 837.

"As an initial matter, it is doubtful that Plaintiff's thumb fracture rises to the level of a sufficiently serious medical [need] to demand constitutional protection." *Axelson v. Mich. Dep't of Corr.*, No. 09-12514, 2010 U.S. Dist. LEXIS 34979, *5-6 (E.D. Mich. Apr. 9, 2010); *Thomas v. Nassau County Corr. Ctr.*, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003) (holding that allegations of an injured hand do not satisfy the first prong of the test).

Even if Stallworth could satisfy the first prong, he would fail under the second prong because the record is undisputed that he received a substantial amount of medical care related to

his thumb while at the HCDC. When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). Liability attaches only when the plaintiff "demonstrate[s] deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Moreover, "a difference of opinion between a prisoner and a doctor over diagnosis or treatment . . . fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need." *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Stated differently, where the dispute is over the adequacy of the treatment a prisoner received, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 441.

Stallworth received timely medical treatment for his injured thumb. His thumb was examined and x-rayed, and, based upon the findings, he was referred for an orthopedic evaluation. After the evaluation by an orthopedic surgeon, Stallworth's thumb was placed in a cast. All of this treatment occurred while Stallworth was at the HCDC. At most, Stallworth has merely alleged a difference of opinion between himself and medical personnel regarding the diagnosis and adequacy of treatment, which does not demonstrate deliberate indifference to his condition. Accordingly, Defendants are entitled to summary judgment on Stallworth's

remaining claims.

**IV.**

For the reasons set forth above and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 27) is **GRANTED.**

By separate Order, the Court will direct the Clerk of Court to enter summary judgment in favor of Defendants.

Date:

cc: Plaintiff, *pro se*
Counsel of record

4412.008